**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| **DEBRA L. TURNER** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Civil Action No.** |
| | : | **5:06-CV-274-HL** |
| **MICHAEL W. WYNNE, SECRETARY OF THE AIR FORCE,** | : | |
| | : | |
| **Defendant.** | : | |
| | : | |

# ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 12). For the following reasons, Defendant's Motion is granted.

## I. FACTS AND PROCEDURAL HISTORY

### A. Factual History

This is an employment discrimination case surrounding Defendant's failure to promote Plaintiff to a position at the Robins Air Force Base ("RAFB"), Georgia. The facts, viewed in the light most favorable to Plaintiff as the non-moving party, are as follows:[1] Plaintiff Debra Turner, an African-American female over 40 years of age, is a federal government employee working at RAFB. (Turner Dep. 10.) Plaintiff

[1] In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004).

began working at RAFB as a Human Resource Specialist, GS-12, in the Employment Office on November 2, 2003. (Turner Dep. 10.) In this capacity, Plaintiff handled an array of recruiting matters, such as certain job announcements, recruitment from local universities, and preparing interview questions for prospective candidates. (Turner Dep. 12-14.) Plaintiff's immediate supervisor at all times relevant to this action was Kim Hatcher ("Hatcher"), who was chief of the Production/Support Administration Branch which included, among other offices, the Employment Office. (Hatcher Decl. ¶¶ 2-5.)

In early September 2004, Marilyn Gantt, who was employed as a GS-13 Supervisory Human Resource Specialist, was reassigned out of the Employment Office. (Hatcher Decl. ¶ 6.) That reassignment created a vacancy in the Employment Office for the Supervisory Human Resource Specialist position ("supervisory position"), which is the position at issue in this case. (Hatcher Decl. ¶ 6.) Hatcher, who was the selecting official for filling the position, temporarily appointed Donna Pancake to fill the vacancy for a period of thirty days. (Hatcher Decl. ¶ 6.) At the end of the thirty days, Betty Haffey, who was soon due to retire, was temporarily promoted into the supervisory position. (Hatcher Decl. ¶ 6.) Before her retirement, Haffey established a monthly rotation for acting supervisors to be used in that position after she left. (Hatcher Decl. ¶ 6.)

Beginning on January 3, 2005, Max Wyche ("Wyche"), an African-American male, under 40, who was also a GS-12 working in the Employment Office, was

temporarily appointed to serve as the acting supervisor based on the rotation system.[2] (Hatcher Decl. ¶ 6.) Wyche continued to act in this capacity for approximately two weeks, after which he was selected as the permanent replacement. (Hatcher Decl. ¶ 6.) According to Hatcher, during the interim period of two weeks, Wyche's temporary appointment was not recorded in his employment records and it carried with it no additional pay or benefits. (Hatcher Decl. ¶ 6.)

To fill the Supervisory Human Resource Specialist position permanently, the Staffing Office at RAFB posted vacancy announcement No. 04DEC426332 between Dec 17, 2004 and January 3, 2005. (Compl. ¶ 9; Hatcher Decl. Ex. A.) In her declaration, Hatcher describes the hiring decision as a two-step process. Initially, the applicant must be referred by the Staffing Office and placed on the candidate referral certificate for selection. (Hatcher Decl. ¶ 7.) To be qualified for initial referral the applicants are compared by the Staffing Office using a qualifications template and all applicants are required to have 52 weeks (12 months) of specialized experience in the broader skill codes on the template. (Hatcher Decl. ¶ 8.) If an applicant passes this initial screening and a referral is made on the certificate, it is

[2] This fact is contested in Plaintiff's Statement of Facts in Material Dispute on the ground she had no knowledge of a rotation system implemented for the position. However, a lack of knowledge is insufficient in creating a dispute of fact. Middle District of Georgia, Local Rule 56 ("The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Rule 56(f) of the Federal Rules of Civil Procedure.").

then up to the selecting official to apply selection criteria that are established by that selecting official. (Hatcher Decl. ¶ 8.)

Hatcher, as the selecting official, determined not to conduct interviews for the selection, but did a records review and made the hiring decision using a standard matrix used for comparing the applicants' qualifications. (Hatcher Decl. ¶ 9.) Hatcher did not create the matrix she used for this particular selection, but used a matrix which is commonly used for selecting higher level employees, including GS-13 selections at RAFB. (Hatcher Decl. ¶ 9.) In that matrix, work experience counted as 70 points, prior appraisals and awards counted as 10 points, and education counted as 20 points. (Hatcher Decl. ¶ 9.)

Utilizing the qualifications template the Staffing Office referred eight candidates, including Plaintiff, and placed them on the candidate referral certificate. (Hatcher Decl. ¶ 9; Compl. ¶ 10.) All eight candidates had the required 52 weeks of specialized experience in the broader skill codes on the template.[3] (Hatcher Decl. ¶ 8.) Hatcher, after juxtaposing the individual candidates' records with the standard matrix, calculated each candidates' total points. Plaintiff was awarded a score of 89. (Compl. ¶ 14.) This score placed Plaintiff ahead of four candidates, but behind Wyche (score of 94), who was awarded the most points, and Mary Brooks (score of 91). (Hatcher. Decl. ¶ 11.)

---

[3] Plaintiff contests this fact, but Plaintiff has pointed to nothing in the record to controvert it.

In calculating prior appraisals and awards, Hatcher awarded Wyche, Plaintiff, and three other candidates the maximum of 10 points. (Hatcher Decl. ¶ 11.) In the area of education, Wyche, who had a Master's degree, scored a total of 14 points. Plaintiff, who had an Associate's degree, scored 9 points.[4] (Hatcher Decl. ¶ 11.)

In calculating work experience Hatcher awarded the maximum of 70 points to four of the candidates, including Mary Brooks, Donnette Dixon, Plaintiff, and Wyche. (Hatcher Decl. ¶ 10; Compl. ¶ 17.) Hatcher, in her declaration, stated

> Ms. Brooks had the skill of the job in question, but it was gained in the [Delegated Examining Unit] function which is related, but differs from the employment office function; Donnette Dixon had special examining unit experience, again related, but not experience in the specific function. Likewise, Mr. Wyche and [Plaintiff] had significant experience in the Civil Personnel Office and in the skill of the job, but . . . not what I considered to be significant experience in that particular function.

(Hatcher Decl. ¶ 10.)

As to Wyche's and Plaintiff's more particular skills of the job, as opposed to the broader skill codes need for the initial qualifications template, Wyche had worked

[4] Plaintiff contests this fact, but once again Plaintiff has pointed to nothing in the record to controvert it. Moreover, the points that the candidates received for each category are reflected on the actual matrix. (Compl. Ex. A.)

in the Employment Office for 3 months and Plaintiff had worked in the Employment Office for approximately 14 months. (Hatcher Decl. ¶ 10.)

According to Hatcher, no candidate had a "significant amount of experience" directly related to the open position, including Wyche and Plaintiff because "it generally takes years of experience to develop the particular skills required in that position." (Hatcher Decl. ¶ 10.) Thus, neither Wyche's 3 months nor Plaintiff's 14 months experience in the Employment Office were "significant enough to warrant a different score." (Hatcher Decl. ¶ 10.) In deciding to award the maximum 70 points to the four candidates, Hatcher further stated this was because "[she] would consider any time in the skills of the position as the best qualifying experience."[5] (Hatcher Decl. ¶ 9.) Hatcher asserts the primary reason Wyche ranked ahead of Ms. Brooks and Plaintiff is because he possessed a Master's degree. (Hatcher Decl. ¶ 13.)

**B. Procedural Background**

After Wyche was promoted, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging she was discriminated against on the basis of race, gender, and age when (1) she was not selected to serve in the temporary supervisory position, and (2) when she was not promoted to the supervisory position. Following receipt of the notice of right to sue

[5] The other four candidates were each awarded 60 points because, according to Hatcher, their experience was in less closely related staffing functions. (Hatcher Decl. ¶ 10.)

letter from the EEOC, Plaintiff filed suit in this Court on August 15, 2006, against Michael Wynne, Secretary of the Air Force. In her Complaint, Plaintiff asserted, among other things, employment discrimination claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act ("ADEA").[6]

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). When considering a motion for summary judgment, the Court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The Court may not, however, make credibility

[6] Plaintiff also asserted claims for intentional infliction of emotional distress (Count III) and material misrepresentations (Count IV). There is no evidence that Plaintiff has previously presented either claim to the appropriate federal agency. The Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, requires as a jurisdictional prerequisite to filing suit against the United States for monetary damages a presentation of such claims to the appropriate federal agency. 28 U.S.C. § 2675; see Lykins v. Pointer, Inc., 725 F.2d 645, 46 (11th Cir. 1984) (stating that 28 U.S.C. § 2675 is jurisdictional and cannot be waived). Plaintiff has failed in this regard. Accordingly, both claims are dismissed.

determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S. Ct. 2097 (2000).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (internal quotations omitted). If the moving party meets this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the nonmoving party is not entitled to a judgment as a matter of law. Id. at 324-26. This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Under this scheme summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

**B. Title VII Claims**

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e-2(a)(1) (West 2003). A Title VII plaintiff may attempt to show this

discrimination through either direct or circumstantial evidence. Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999). Direct evidence of discrimination is evidence that "'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" Id. (quoting Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997)) (alterations in original). Direct evidence consists only of "'the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." Id. (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)).

In this case, Plaintiff has produced no direct evidence, and therefore, she must establish her discrimination claim by relying on the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089) (1981). Under this framework, a Title VII claimant must first establish a prima facie case of discrimination by showing that: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) similarly situated employees outside of her protected class were treated more favorably; and (4) she was qualified to do the job. Burke-Fowler v. Orange County, Fla., 447 F.3d 1319, 1323 (11th Cir. 2006). To establish a prima facie case in a failure to promote case, the plaintiff must establish that: (1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was not promoted; and (4) someone outside her

protected class was promoted.[7] Walker v. Mortham, 158 F.3d 1177, 1186 (11th Cir. 1998).

Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason ("LNR") for its employment action.[8] Burke-Fowler, 447 F.3d at 1323. If the defendant articulates an LNR, the burden shifts back to the plaintiff to show that the defendant's proffered reason for the adverse action is pretextual. Id. The plaintiff can prove pretext "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Jackson, 405 F.3d at 1289 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. at 256).

Here, Defendant is entitled to summary judgment on Plaintiff's disparate treatment gender and race discrimination claims. Plaintiff has asserted two disparate treatment claims. Plaintiff first contends that she was discriminated

---

[7] There is an intracircuit split in the Eleventh Circuit as to whether the fourth element of a plaintiff's prima facie case in a failure to promote case requires the plaintiff to show that the employee who received the promotion was equally or less qualified than the plaintiff. For the reasons stated in Ferguson v. Ga. Dept. of Corrections, 428 F. Supp. 2d 1339, 1355 n.21 (M.D. Ga. 2006), this Court does not require that the plaintiff make this showing as part of her prima facie case; the plaintiff need only show that someone outside her protected class received the promotion.

[8] The defendant's burden at this stage is a burden of production. See Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005).

against on the basis of gender and race when she was not given the opportunity to serve as acting supervisor between September 2004 and January 2005. Essentially, Plaintiff contends she was discriminated against when Wyche was temporarily appointed to serve as the acting supervisor beginning on January 3 and continuing until his selection as the permanent replacement two weeks later. According to Plaintiff, this temporary appointment is evidence that Wyche was being hand-picked and pre-selected for the supervisory position. Plaintiff's second disparate treatment claim asserts she was discriminated against on the basis of gender and race when she was not promoted to the supervisory position.

**1. Acting Supervisor Position**

First, Plaintiff cannot establish a prima facie case on her claim that she was discriminated against on the basis of gender and race when she was not given the opportunity to serve as acting supervisor. Plaintiff did not suffer an adverse employment action as a result of Wyche's temporarily appoinment to serve as the acting supervisor for two weeks. In Davis v. Town of Lake Park, Fla., 245 F.3d 1232 (11th Cir. 2001), the plaintiff contended he was discriminated against in violation of Title VII when his work assignments changed. Id. at 1240. The Eleventh Circuit held that the changes did not rise to the level of an adverse employment action because the changes did not cause any tangible harm to the employee. Id. The Court recognized that although demotions are actionable under Title VII, the plaintiff in the case before it did not suffer a demotion. Id. at 1240, 1243. The Court concluded by

noting that a change in work assignments would rise to the level of an adverse employment action only in unusual instances. Id. at 1245.

In this case, Plaintiff does not even contend that her job assignments changed. Instead, Plaintiff contends that she was discriminated against because Wyche was allowed to perform tasks normally assigned to the supervisor position. Plaintiff, however, cannot demonstrate that she suffered any tangible harm by Wyche's temporary change in work assignments. Rarely does an employee's own change in job assignments constitute an adverse employment action. Id. This Court thinks that it would therefore be an even rarer situation for a third-party employee's temporary change in job assignments to constitute an adverse employment action. As a result, this Court finds that Wyche's temporary change in work assignments did not constitute an adverse employment action against Plaintiff. See also Allen v. Mich. Dept. of Corrs., 165 F.3d 405, 409-10 (6th Cir. 1999) (holding that defendant's failure to allow corrections officer to serve as "acting sergeant" in regular sergeant's absence did not constitute an adverse employment action).

Moreover, Defendant would still be entitled to summary judgment on this claim even if this Court found that Plaintiff suffered an adverse employment action. Defendant's LNR for temporarily appointing Wyche to serve as the acting supervisor for two weeks is that he was selected through a rotation system implemented by Haffey. Defendant has also put forward evidence showing that Wyche's temporary appointment was not recorded in his employment records and it carried with it no

additional pay or benefits. The Court finds that the Defendant sufficiently articulated a LNR, and therefore, the burden shifts to the Plaintiff to demonstrate pretext. Plaintiff has proffered no evidence rebutting the Defendant's LNR. Instead, Plaintiff merely asserts that the temporary appointment of Wyche is itself evidence that he was being hand-picked and pre-selected for the supervisor position. Plaintiff makes this same argument in attempting to establish that Defendant's LNR is pretextual as to the failure to promote claim. For the reasons stated below in this Court's discussion of Plaintiff's failure to promote claim, Plaintiff has failed to establish that Defendant's LNR is pretextual. As a result, Defendant is entitled to summary judgment for this additional reason.

**2. Supervisor Position Promotion**

In examining Plaintiff's promotion claim, the Court will assume for purposes of summary judgment that she has established a prima facie case for gender and race discrimination. That is, the Court will assume that the evidence, when viewed in the light most favorable to Plaintiff, reasonably indicates that she is a member of a protected class, she was qualified and applied for the promotion, she was not promoted, and that someone outside her protected class was promoted.[9]

---

[9] Defendant concedes that Plaintiff has established a prima facie case on the promotion claims with respect to gender and age discrimination, but argues Plaintiff cannot establish a prima facie case with respect to color discrimination. Because the Court finds that Plaintiff fails to provide sufficient evidence that Defendant's LNR is merely pretext, it is unnecessary to analyze whether Plaintiff has established a prima facie case for race discrimination.

The burden now shifts to Defendant to produce evidence sufficient to indicate that it actually rejected Plaintiff, or preferred someone else, for the supervisory position because of one or more LNR's. Defendant's LNR for promoting Wyche instead of Plaintiff is that Wyche was more qualified. The Court finds that Defendant has put forth sufficient evidence to support its articulated LNR. Because Defendant has articulated an LNR, the burden is on Plaintiff to demonstrate pretext.

Plaintiff contends that Defendant's LNR is pretextual because she was more qualified than Mr. Wyche for the position in question. Specifically, Plaintiff contends that she was more qualified because (1) she had worked in the Employment Office for approximately one year longer than Wyche, and (2) she began working for the government in 1981, while Wyche began working for the government in 2000. A plaintiff in a Title VII case, however, cannot show pretext by merely showing that she was more qualified than the employee who actually received the promotion. Cooper v. Southern Co., 390 F.3d 695, 732 (11th Cir. 2004). Disparities in qualifications can only be used to show pretext if those disparities are "'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question.'" Id. (quoting Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000)).

Here, Plaintiff has not offered evidence showing that she is "'so clearly more qualified for the position than [Wyche] that a reasonable juror could infer discriminatory intent from the comparison.'" Id. (quoting Lee, 226 F.3d at 1255). It

is undisputed that Wyche was awarded more points on his evaluation. Nevertheless, Plaintiff attempts to establish pretext by attacking the validity of the evaluation and the scores awarded. As evidence that Hatcher's awarding of maximum points to both Wyche and Plaintiff is subterfuge for discrimination, Plaintiff sets forth both her own opinion of her superior credentials and an affidavit of another supervisor at RAFB describing the selection process for applicants.

Plaintiff asserts that, in her opinion, Hatcher should not have given equal points for experience to her and Wyche when she had approximately one year more experience in the Employment Office. However, according to Hatcher this additional year of experience in the Employment Office does not warrant a difference in points for experience for the supervisor position because it takes years of experience to develop the particular skills required in that position. Plaintiff provides no evidence to refute this explanation. Plaintiff's lack of refutation is of notable significance, as the Eleventh Circuit has emphasized that "a plaintiff is not allowed to recast an employer's proffered non-discriminatory reasons or substitute [her] business judgment for that of the employer." Chapman v. AI Transport, et al., 229 F.3d 1012, 1030 (11th Cir. 2000). "Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Id.

Plaintiff also submits the affidavit of Jacqueline Rozier, employed in the communications group as a supply systems supervisor at the RAFB, in which she

describes the process for employee hiring and promotion.[10] Plaintiff primarily relies upon Rozier's statement that "[t]o qualify as experienced in a particular skill code set *I* am seeking to hire or promote, the candidate must have at least 12 months experience in the particular skill(s) code. If *I* am awarding points for experience under a records review, *I* cannot award points for someone with less than 12 months' experience in the particular skill code set for the position *I* am seeking to hire/promote." (Rozier Aff. ¶ 11.) (emphasis added). Plaintiff contends this statement creates a genuine issue of fact on the issue of pretext because Rozier claims she would credit job experience differently than Hatcher. However, Rozier, who is not a supervisor in the area in question, does not make a blanket claim that *all* selecting officials must follow her method of awarding points for experience. Nor does Rozier cite to any binding policy or regulation at RAFB which would require selecting officials to award points for experience differently than performed by Hatcher. In short, Rozier's statements do not contradict or discredit the LNR enunciated by Hatcher for promoting Wyche and not Plaintiff.

Plaintiff's second contention in support of her alleged superior credentials is that it was inappropriate for Hatcher, when calculating experience, to not consider Plaintiff's time spent working for the government. This argument is equally unpersuasive. The most obvious problem with this argument is that Plaintiff has

---

[10] The affidavit was not signed by the affiant, Rozier. Defendant did not, however, raise this as an issue. Accordingly, the evidence is considered.

provided no evidence that previous positions held with the government have any relation whatsoever to the particular skills required of the supervisory position. More importantly, it is undisputed that Hatcher, as the selecting official, was to establish and apply the selection criteria.

Finally, Plaintiff asserts that the temporary appointment of Wyche is itself evidence that he was being hand-picked and pre-selected for the supervisor position. "Evidence of preselection operates to discredit the employer's proffered explanation for its employment decision," Goostree v. State of Tenn., 796 F.2d 854, 861 (6th Cir. 1986). "However, preselection does not necessarily violate Title VII if it is made on the qualifications of the preselected party." Dorrego v. Public Health Trust of Miami Dade County, 293 F.Supp.2d 1274, 1286 (S.D. Fla. 2003) (citing Kennedy v. Landon, 598 F.2d 337, 341 (4th Cir. 1979)); see also Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (noting that "even where preselection violates corporate personnel policies, it does not necessarily indicate racial discrimination"). The problems with Plaintiff's argument of preselection are two-fold. First, Plaintiff has not proffered any evidence to refute that Wyche was selected to serve as the acting supervisor using a rotation system implemented by Haffey, not Hatcher. Second, even assuming Plaintiff proffered evidence of preselection, which she has not, she has failed to put forward evidence sufficient to demonstrate that the preselection was based on discrimination in violation of Title VII.

In sum, the Court concludes that Plaintiff failed to provide sufficient evidence to allow a reasonable fact finder to conclude that the Defendant's LNR is not actually the motivation for the Defendant's decision. Accordingly, the Court holds that Plaintiff has failed to show that issues of fact exist as to whether Defendant's reasons were pretext, and therefore, Defendant is entitled to summary judgment on Plaintiff's failure to promote claims under Title VII.

**C. ADEA Claim**

The ADEA provides that "[a]ll personnel actions affecting [federal] employees . . . who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633(a). Because "[t]he ADEA and Title VII share common substantive features," McKenna v. Nashville Banner Pub. Co., 513 U.S. 352, 358, 115 S. Ct. 879, 884 (1995), courts apply the same analysis under Title VII to determine whether an ADEA violation has occured. Ellis v. Wal-Mart Stores, Inc., 952 F.Supp 1522, 1527 n.6 (M.D. Ala 1996). Thus, the McDonnell Douglas framework that is described above in relation to Plaintiff's Title VII claim also applies to her ADEA claim. Cofield v. Goldkist, Inc., 267 F.3d 1264, 1267 n.6 (11th Cir. 2001).

Similar to a Title VII failure to promote claim, a plaintiff establishes a prima facie case of failure to promote under the ADEA by showing: (1) she was a member of a protected age group, (2) was subjected to adverse employment action, (3) was qualified to do the job, and (4) was replaced by or otherwise lost a position to a

younger individual. Chapman, 229 F.3d at 1024. Here, Defendant concedes that Plaintiff has established a prima facie case. But, Defendant contends that Plaintiff can not demonstrate pretext for Defendant's LNR for the same reasons outlined above in relation to Plaintiff's Title VII claims. The Court concludes that, for the reasons discussed in the Title VII pretext discussion, Plaintiff cannot establish that Defendant's LNR was pretext for age discrimination.[11]

## III. CONCLUSION

For the foregoing reasons, Defendant is entitled to judgment as a matter of law as to Plaintiff's claims, and therefore, Defendant's Motion for Summary Judgment is GRANTED.

**SO ORDERED**, this the 18th day of March, 2009.

***/s/ Hugh Lawson***
**HUGH LAWSON, Judge**

wjc

[11] Because the legal analysis is the same for both a Title VII and ADEA claim, district courts need not analyze each claim separately. Cofield, 267 F.3d at 1267 n.6.